THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT EARL CURTIS, Defendant-Appellant.

(No. 70-112;

Third District—September 27, 1972.

John L. Barton, of Defender Project, of Ottawa, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Defendant was charged with an armed robbery committed at the A & P store in St. Anne, Illinois, on January 5, 1968. In a trial before a jury defendant was found guilty.

Three witnesses were in the store at the time of the robbery. All three witnesses saw two Negro men and one Negro woman in the store at the time of the robbery. The witnesses saw weapons in the hands of the two Negro men. The store manager described items that were taken from the store which included currency, Helbros watches, Plaid stamp containers and stamps with serial numbers. The evidence of the store manager left no question that the items were turned over to the Negroes by the store manager as a result of the threat of the use of force while armed with a dangerous weapon.

All three witnesses described the two Negro men as one being tall and one short. The height of the shorter man does not clearly appear from the record, but it appears that it was in the area of five feet seven inches to five feet nine inches.

Only one witness in the store attempted to describe the shorter man. Her description was based on seeing the man's face for approximately the period of time that it took him to shift a gun from one hand to the other and pull a ski mask down over his face. She described the man as being a light complected Negro and did not notice any mustache on his face. The following day the defendant was in a line-up and this witness failed to identify him. At the time of trial, in April, 1970, the witness identified the defendant as being the shorter man. The other two witnesses in the store were unable to identify the defendant.

While the robbery was in progress a fourth witness passed in front of the A & P store and saw a Pontiac with a woman in the back seat parked in the vicinity. She described the car as being grayish-gold at the trial after having told the police at the time of the robbery that it was a yellowish-gold Pontiac.

Approximately forty-five minutes after the robbery, a gold colored Pontiac was stopped at a road block. The defendant was a passenger in the right front seat of the automobile. He was described as being five feet eight inches to five feet nine inches in height, dark complected, and having a small mustache. A tall Negro, described as being six feet

five inches, was in the back seat along with a Negro female. The driver of the automobile was a Negro of the height of approximately six feet. Currency, watches, Plaid stamp machines and Plaid stamps were removed from the interior of the automobile in the area of the back seat. The watches, Plaid stamp machines, and the Plaid stamps were identified by the store manager as having come from the A & P store. Also weapons were discovered in the automobile, one of which was testified to as having resembled a weapon held by one of the robbers at the store. Currency was found in the interior of the car in the area of the front seat. No weapon or identifiable property from the robbery was found on the defendant.

Defendant was taken into custody and on or about February 25, 1968, escaped from the County Jail. There were references by the attorneys that the defendant was being held in the County Jail on more than one charge, but there was no evidence in the record of other charges apart from the discussions of the attorneys.

Defendant's mother testified that the defendant came to her home after dark on January 5, 1968, and left when a car came up to the vicinity of the front door of the house and blew its horn. She was unable to give any time when this took place other than it was after dark on January 5, 1968. The tall man who was arrested in the car with the defendant testified on behalf of the defendant that he was driving the Pontiac automobile and stopped at a house. When he left the house a Negro woman, the defendant and another Negro were in the automobile. The only person who he knew was the defendant. He did not recall seeing anything in the automobile. The defendant did not testify.

The height of the Negro driving the automobile at the time of the arrest was shown by photographic evidence to be over six feet.

■■ Defendant maintains that the court erred in denying his motion for a directed verdict at the close of the State's evidence. This motion was waived by reason of the defendant introducing evidence after the State had closed its case. *People v. Cross*, 40 Ill.2d 85, 237 N.E.2d 437; *People v. Washington*, 23 Ill.2d 546, 179 N.E.2d 635.

Defendant argues that the court erred in giving the following instruction:

> "If you find that the defendant had exclusive possession of recently stolen property jointly with others and there was no reasonable explanation of his possession, you may infer the defendant obtained possession of the property by armed robbery."

■■ This instruction was a modification of I.P.I. (Criminal) 13.21 and we hold it to be a correct statement of the law. *People v. Poe*, 48 Ill.2d 506, 272 N.E.2d 28; *People v. Hayes*, 272 N.E.2d 423; *People v. Reynolds*,

27 Ill.2d 523, 190 N.E.2d 301; *People v. Leving*, 371 Ill. 448, 21 N.E.2d 391.

■■ Defendant maintains that the State failed to show that as a passenger in the front seat of the car he had possession of the stolen property. The evidence shows items of identifiable property in the interior of the automobile in the area of the back seat. Currency which was also taken at the time of the robbery was found in both the back seat area and in the front seat area. Defendant cites *People v. Mulvaney*, 286 Ill. 114, 121 N.E. 229. In that case the defendant's only connection with a stolen car was to look at it with some other people. The court held that this did not establish exclusive or personal possession of the car. We can see no similarity between the facts of possession in *Mulvaney* and this case. Defendant also cites *People v. Mosley*, 265 N.E.2d 889. In that case marijuana was found locked in the trunk of a car in which defendant was a passenger. The operator and owner of the car had the key to the trunk of the car and this court held that the evidence did not indicate that defendant exercised any degree of control or possession over the marijuana. However, the court did state that the word "exclusive" does not rule out the fact that such possession may be joint. We further pointed out that to hold otherwise would permit two or more persons to gain immunity from possession of marijuana by proving joint possession. While the offense in this case is not for possession of marijuana, the same reasoning can be applied to the inference arising from the possession of recently stolen property. All four persons in the automobile at the time of arrest in this case had exclusive possession of recently stolen property jointly. *People v. Reynolds*, 27 Ill.2d 523, 190 N.E.2d 301.

■■■ Defendant next contends that he was denied due process for the reason that even if defendant's possession of recently stolen property was established that this could not infer proof of the required elements of armed robbery. Defendant cites *People v. Baxa*, 50 Ill.2d 111, 277 N.E.2d 876. It is correct that this case holds that the inference raised by possession of recently stolen property can not be extended to prove knowledge that the property was stolen, and in the absence of other proof of such knowledge, a conviction for knowingly possessing property stolen by another can not be sustained on the sole basis of the inference. However, in the case before this court there is ample evidence of the required elements to be proven to sustain a conviction for armed robbery. Witnesses testified as to the taking of property from the presence of the store manager by threatening the imminent use of force while armed with a dangerous weapon. The inference from the possession of recently

stolen property is not used to prove these elements of robbery, but rather that the defendant was one of the persons involved in the armed robbery described by the witnesses. Instructions on the inference arising from possession of recently stolen property in armed robbery cases has been approved by our Supreme Court and it was not error in this case. *People v. Powloski,* 311 Ill. 284, 142 N.E. 551; and *People v. Flowers,* 14 Ill.2d 406, 152 N.E.2d 838.

■■ Defendant contends that he was denied a fair and impartial trial because a friend of the defendant's spoke to a juror after the jury was sworn, trial had commenced and before a verdict. This point was first raised by defendant in the trial court after the jury's verdict. The juror involved stated at a hearing held after verdict that a man came to his home, told him that he was defendant's brother and asked the juror to be fair. The juror stated that his deliberations were not influenced by the conversation; that he had not reported the conversation to the judge because he hadn't discussed the case with the man who called at his home.

This was an unfortunate incident but the verdict of a jury can not be impeached by their own affidavit or testimony. (*People v. Pulaski,* 15 Ill.2d 291, 155 N.E.2d 29; *People v. Stacey,* 25 Ill.2d 258, 184 N.E.2d 866; *People v. Krueger,* 99 Ill.App.2d 431, 241 N.E.2d 707.) Further defendant has not cited any case holding that an incident of this type, without a showing of prejudice, was error sufficient to require a new trial.

■■ Defendant objects to certain parts of the final argument made by the State as being so improper and prejudicial as to deny the defendant a fair trial. We have considered the points raised by defendant and do not find any argument which could be held to have so prejudiced the defendant as to deny him a fair trial.

Defendant contends that it was error to introduce evidence of the escape for two reasons, (1) that the escape was too remote from the time of the crime (52 days), and (2) that at the time of his escape he had four indictments pending against him and it can not be said that he escaped because he feared conviction for the offense involved in this case.

■■ Defendant does not cite any case to support his contention. In *People v. Gambino,* 12 Ill.2d 29, 145 N.E.2d 42, defendant escaped from jail while awaiting trial for armed robbery approximately four months after the commission of the offense and his arrest. The Supreme Court held that evidence of the escape was admissible as a fact raising a presumption of guilt. In *People v. Neiman,* 90 Ill.App.2d 447, 232 N.E.2d 805, the defendant was in custody on more than one pending charge at

the time of his escape and the court held that evidence of the escape was admissible. We find no error in admitting evidence of the escape of the defendant in this case.

■■ Lastly, the defendant urges he was not proven guilty beyond a reasonable doubt. The evidence of an armed robbery can not be questioned. Defendant can only raise the question of whether or not he was involved in the armed robbery. The defendant quite properly points out the inaccuracies in the description of the shorter robber by the witness who observed his face for a short period of time. We have also considered the fact that the witness was unable to point out the defendant in a line-up the following day after the offense was committed. We have also considered that her identification of the defendant at the time of trial was not positive and was weakened by cross examination. There can be no question that the witness was frightened and confused at the time of the robbery. While her inaccuracies in identification could not be the sole basis for convicting the defendant, they also can not be used as the sole basis for freeing the defendant. The defendant had ample opportunity to explain both his possession of the stolen property and his escape from custody. In the absence of any reasonable testimony on behalf of the defendant on this point the inferences raised were properly before the jury. We can not say that the evidence is so improbable as to raise a reasonable doubt of defendant's guilt.

The judgment of the Circuit Court of Kankakee County is affirmed.

Judgment affirmed.

ALLOY, P. J., and DIXON, J., concur.