(No. 21925.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY SCHAEFFER, Plaintiff in Error.

*Opinion filed October 21, 1933.*

ARNOLD B. HARRIS, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, GRENVILLE BEARDSLEY, and J. ALBERT WOLL, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff in error, Henry Schaeffer, (designated herein as the defendant,) was indicted in the criminal court of Cook county, with Barney Gold, Harry Abelsky, Edward Ceglarski and Frank Schaeffer, for the robbery of Carl Eckel while armed with a pistol. The defendant and Gold were put on trial together, but before the entire jury had been selected Gold withdrew his plea of not guilty and out of the presence of the jury entered a plea of guilty. The defendant was found guilty. Motions for new trial and in arrest of judgment were overruled and the defendant was sentenced to imprisonment in the penitentiary for an indeterminate term of from one year to life. He prosecutes this writ of error for a review of the record.

Carl Eckel testified for the People substantially as follows: On November 17, 1931, he was engaged in business as a manufacturer of sausage at 1741 West Division street, in Chicago. On that date, at about 6:45 P. M., three men, one armed with a shot-gun and the other two with pistols, entered his place of business and took from him $533 lawful money of the United States which belonged to him. After the robbery the men departed and he did not know where they went. He afterwards saw some of them at a police station in Chicago.

Thomas J. Johnson, assistant State's attorney, testified that in January, 1932, at the Albany Park police station, he questioned the defendant concerning the robbery committed on November 17, 1931. There was present one Isaacson, a shorthand reporter, who wrote the questions and answers. Witness had no independent recollection of the statement made at that time by the defendant but had refreshed his recollection of what was said by reading over a copy of the questions and answers that had been transcribed. He testified that the defendant said he drove the automobile which conveyed the men who committed the robbery. He parked it in the rear of Eckel's place of busi-

ness. All of the men except himself got out of the automobile and went into the sausage factory. He waited in the automobile for them and a short time later they ran back to the automobile. He then drove them to the hotel of his brother, Frank Schaeffer, where they split the proceeds of the robbery. He got about nine dollars as his share.

Christian H. Isaacson testified that on the evening of January 20, 1932, at the Albany Park police station, in Chicago, he took down in shorthand the questions propounded by Thomas J. Johnson to the defendant and the answers thereto made by him. There were present at the time besides the witness, Johnson, the defendant, Captain Goldberg, Lieutenant O'Hara, officers Wilk and Starr, and also Walter Bogacz, Bernard Gold and Ceglarski. Before any questions were asked or answered Johnson told the men that they were under arrest for the robbery of Carl Eckel; that they did not have to make any statement unless they wanted to, and that if they made a statement it must be of their own free will and accord and with the understanding that it might be used against them later. The witness then read the questions asked of the defendant and the answers that he made thereto. The substance of the answers made by the defendant is the same as testified to by Johnson. Isaacson was then permitted to read the questions propounded to Ceglarski and Gold and their answers thereto, over the objection of the defendant. The answers made by them as reported by the witness amount to a complete statement and confession of their participation in the robbery.

Edward Ceglarski, who was jointly indicted with the defendant, was at the suggestion of the State's attorney called as the court's witness and over the objections of the defendant testified substantially as follows: On November 17, 1931, he, Barney Gold, Harry Abelsky, the defendant and his brother, Frank Schaeffer, drove in an automobile to the rear of Carl Eckel's place of business.

Gold was armed with a shot-gun and witness and Abelsky were each armed with a pistol. The defendant remained in the automobile and the other four men got out of it and went into Eckel's place of business and committed the robbery. They then ran to the automobile and were driven by the defendant to Frank Schaeffer's hotel, where the money was divided among them, and each of the five men got nine dollars of the proceeds of the robbery. Witness had been indicted for five other robberies and pleaded guilty to all of those indictments. He did not want to go to the penitentiary. Captain Goldberg informed him that he would help him out if he testified. He did not think he was going to get any help from the captain for his testimony. Nobobdy had promised him anything but he did hope that his testimony would help him in this case. He was arrested on November 17, 1931, and made a statement to the police because he received a beating. He received "plenty of beating." He was questioned at the police station in the presence of the defendant, who denied that he took part in the robbery. The defendant made no statement to the police in the presence of witness.

The defendant testified in his own behalf substantially as follows: He did not in any way participate in the robbery of Carl Eckel and did not receive any of the proceeds of that robbery. He was arrested at the county jail in January, 1932, when he went there to see his brother, Frank, and learned nothing of the robbery until some time after he was arrested. At the Albany Park police station he was handcuffed to a chair and questioned by four or five policemen. They wanted to know from him who "Ski" was, which question had reference to Ceglarski, and after they had questioned him until about one o'clock in the morning he finally admitted that he knew Ceglarski and told the police where he lived. Ceglarski was arrested and brought to the police station and witness saw the policemen give him a "terrific beating." At the time Ceglar-

ski told the policemen that witness was the man who drove the car at the time of the robbery witness denied driving the car. Captain Goldberg then sent the other men out of the room and tramped and stood on witness' toes until witness told him that he would make a statement and do anything to get away from him. Thereafter he did make a statement to Johnson in exactly the same form as reported by Isaacson, but that statement was untrue and was made by him because of the abuse he had received. He was not in the company of Gold and Ceglarski at any time on the day the robbery was committed.

After the defendant had given his testimony, the court, at the request of the State's attorney, over the objection of the defendant, called Gold to the witness stand. He was questioned concerning the robbery. Gold admitted that he took part in the robbery, and testified that the others who were with him when the robbery was committed were Ceglarski, Abelsky, Walter Bogacz and the defendant. At the conclusion of the testimony of Gold the defendant made a motion to withdraw a juror and have the case continued. This motion was denied, and Captain Goldberg was called as a witness for the People and denied that he or any other policeman abused or mistreated the defendant while he was at the Albany Park police station after his arrest.

The foregoing is the substance of all the evidence in the case. It is contended by the defendant that the judgment should be reversed because the evidence is insufficient to support the verdict and because the court committed error in calling as the court's witnesses Ceglarski and Gold, and in denying the motion to withdraw a juror and to continue the cause at the conclusion of Gold's testimony.

It is, and always has been, the law in this State that the testimony of an accomplice is subject to grave suspicion and should be acted upon with great caution, (*Cohn v. People,* 197 Ill. 482; *People v. Johnson,* 317 id. 430; *People v. Harvey,* 321 id. 361;) but it is competent evi-

dence, and, although uncorroborated, may be sufficient to sustain a conviction if it proves guilt of the defendant beyond a reasonable doubt. (*People* v. *Baskin,* 254 Ill. 509; *People* v. *Maggio,* 324 id. 516; *People* v. *Gallery,* 336 id. 580.) While Ceglarski stated that he had hoped that his testimony would "help him out," he also stated that he had been promised nothing. There is no showing that Gold in giving his testimony was actuated by any promise, or even hope, of leniency, and there is nothing to show that the testimony of either of them was actuated by malice toward the defendant. Their testimony, however, is not uncorroborated and is not the sole basis for the conviction. There was introduced in evidence, without any objection on the part of the defendant, a confession made by him of his participation in the robbery. No question of the admissibility of this confession is raised by this record, and while the defendant, as a witness, testified that it was untrue and was obtained by coercion, the evidence for the People tends to show that it was made voluntarily. We have read and considered the evidence carefully, and our conclusion is that proof of the defendant's guilt is not so lacking as to indicate that the jury were swayed by passion or prejudice or acted without reason in returning a verdict of guilty. It is our opinion that the evidence shows the guilt of the defendant beyond all reasonable doubt and that no other verdict could reasonably have been expected.

Where there is an eye-witness to a crime for whose veracity and integrity the State's attorney does not care to vouch, he is not obliged to call such witness but the court may call him and allow cross-examination by both sides, such cross-examination to be limited to the issues involved and kept within proper bounds. (*People* v. *Rongetti,* 344 Ill. 278; *People* v. *Rotello,* 339 id. 448; *Carle* v. *People,* 200 id. 494.) In his examination of witnesses the court should be scrupulously careful that by the questions asked

or his manner of examination he does not appear to the jury to be taking the role of prosecutor and that he give no intimation of any opinion as to the guilt of the defendant. (*People* v. *Bernstein*, 250 Ill. 63.) The underlying principle which permits the court to call an eye-witness for examination is to prevent a miscarriage of justice. (*People* v. *Johnson*, 333 Ill. 469.) In this case it appears that Ceglarski and Gold, the witnesses called by the court, were self-confessed robbers and accomplices of the defendant, for whose veracity the State's attorney was unwilling to vouch. No questions of any kind were put to the witness Ceglarski by the court but his testimony was given on cross-examination by the State's attorney and the attorney for the defendant. There appears to have been no impropriety in the manner of cross-examination of this witness by either attorney. The examination of the witness Gold was conducted by the court, but the questions asked of him were few. They were as to his name, his place of residence, whether he participated in the robbery of Eckel and as to who were his accomplices in that robbery. There appears to have been nothing in the method by which the examination was conducted or in the nature of the questions asked from which the jury could reasonably have obtained the impression that the trial judge was acting as prosecutor or that he thought the defendant guilty. It appears from the record that Gold's plea of guilty was entered outside the presence of the jury, and the fact that when the trial started he appeared as a defendant and thereafter entered a plea of guilty and was called as a witness does not constitute reversible error. (*Graff* v. *People*, 208 Ill. 312.) Before Gold had testified that the defendant was one of the persons who participated in the robbery the defendant's attorney was allowed to talk to him privately. As we have stated, we are convinced, from the evidence, of the defendant's guilt. We find no violation of his rights or such prejudicial error in the fact that Ceglarski and Gold were

called as the court's witnesses as would justify us in reversing the judgment.

No alleged errors other than those above discussed are argued by the defendant.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*